# FERDINAND PUTZ v. ST. PAUL GASLIGHT COMPANY.[1]

June 25, 1909.

Nos. 16,092—(106).

### Evidence of Negligence.

Plaintiff, who, though not a steamfitter, had acquired a general familiarity with defendant's machinery, was ordered to take off one length of pipe from the discharge pipe of a trap and to put on another. To do this safely, the steam in the pipe through which it entered the trap should have been shut off and a vent on the trap opened to allow it to escape. Plaintiff shut off the steam, but did not open the valve. When he opened the escape pipe, the steam was discharged and injured him.

The evidence is *held* to have been sufficient to justify the jury in finding that defendant knew or ought to have known that the trap was liable to discharge after the steam had been shut off; that defendant knew or ought to have known that plaintiff was ignorant of the risk attending the work which he was directed to perform; and that the defendant was negligent in its performance of its duty to warn plaintiff of the danger to which the work exposed him and to sufficiently instruct him as to the vent and the necessity for opening it.

### Verdict Reduced.

A verdict of $3,000 is *held* excessive, in view of plaintiff's failure to have

[1]Reported in 121 N. W. 1109.

his wound treated for about six months, and is reduced to $1,925 for both special and general damages.

Action in the district court for Ramsey county to recover $15,000 for personal injuries. The case was tried before Hallam, J., and a jury which returned a verdict in favor of plaintiff for $3,000. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, it appealed. New trial granted unless plaintiff consent to a reduction of the verdict to $1,925.

*How, Butler & Mitchell* and *George Hoke,* for appellant.
*Frank Haskell,* for respondent.

JAGGARD, J.

Plaintiff and respondent was directed by defendant and appellant to take off one length of a steam pipe attached to a trap and to put on another. That trap was a receptacle with an intake pipe, through which steam passed into it, and with another pipe to discharge water and steam. Within the trap, the steam condensed. The water accumulated until the trap was filled and a floating bucket sank. Thereby a discharge valve was automatically opened and water and steam were discharged. The valve then closed. The bucket rose as the trap filled with water, and when full the bucket again sank and opened the valve. To safely perform the work that was assigned to plaintiff, incoming steam should have been cut off and a vent in the trap provided to release uncondensed steam, and the trap should have been opened. Plaintiff shut off steam in the in-come pipe, but did not open the vent. Having procured another pipe length and some rags, he proceeded to unscrew a short piece of discharge pipe. While he was so engaged the trap discharged and sent forth hot water and steam with such force as to knock from his hands the piece of pipe he was holding and to throw it against his leg. He was burned. For the injury thus produced plaintiff brought this action. The jury returned a verdict for $3,000. This appeal was taken from the order of the trial court denying defendant's motion for a new trial.

The first point argued on this appeal is that "the evidence is not sufficient to justify the jury in finding that defendant knew or ought to have known that the trap was liable to discharge after the steam had been shut off." In the course of the trial, however, the defendant asked permission to rest its case in order to have the court direct a verdict in its favor. The defendant then expressly admitted that, "for the purpose of this motion, it knew that the trap might discharge after the valve was shut off." The motion was denied. This admission was creditably frank. It was necessitated by the record. Defendant in law and in fact knew the construction and operation of the trap and the function of the vent. It therefore knew that, alike whether the incoming steam was cut off or not, the condensed steam in the trap would escape with violence through any available opening, if the vent had not been previously opened so as to release the pressure. No error appears in the conclusion of the trial court on this point.

Defendant also urges that "the evidence is not sufficient to justify the jury in finding that defendant knew or ought to have known that plaintiff was ignorant of any risk attending the work which [he] was directed to perform." The question thus presented is not without doubt. On the one hand, plaintiff, a fairly intelligent man, with some understanding of machinery, traps, and the apparatus of defendant generally, had worked at the place of the accident the first five and the last six years of a period extending over eighteen years. He had screwed steam pipes together and had taken them apart. He had, indeed, taken the nuts off the heads of bolts which fastened the head of such a trap as the one here involved "three times, maybe." On the other hand, plaintiff testified that he was ignorant concerning the operation of the trap and of the vent in it to release pressure of the steam. It was for the jury to determine the credibility of his testimony on this point. It was also a legitimate question of fact whether the vent was readily observable by him in the place in which it was situated, with the light shown to have existed there. He was not a steamfitter. He testified:

"At seven o'clock I go to work, then I cleaned off a little, and then I went to the chief engineer and talked a few words: 'The trap

won't go. Steam come out.' And he said: 'You go down and change the pipe,' and I say, 'I don't know how to do that,' and he said, 'Shut off the valve, and take the short pipe off, and put the long one in.' " He also testified that before he was sent down to take that pipe off he had never done that work before; that he did not know how the trap operated inside; that, while he had seen the men fixing the traps, if anything was wrong around there, he had never done it himself. It was not a part of his work "going around the trap."

Defendant's superintendent corroborated the most significant part of this testimony, as follows: "He [plaintiff] asked—he didn't exactly know how to do it. I told him to put the pipe back the same way it was originally, as he knew how it was, and before he did that, I says, 'close off the steam; shut your valve under the receiver.' That is all the instructions he asked for. That is all I gave him."

Plaintiff's ignorance was certainly protruded upon defendant's attention. We are not prepared to hold that from these essentially undisputed facts reasonable minds might not and did not draw different conclusions from the testimony on this point. It follows that it must here be assumed that defendant did know of the danger to which the work it had directed plaintiff to perform exposed him unless the vent was opened and the steam in the trap allowed to escape, and that plaintiff did not know as a matter of law of the method or necessity of releasing such steam before unscrewing the escape pipe. In this view the duty of defendant to warn plaintiff of danger to which the work exposed him, and to instruct him as to the vent and necessity for opening it, was imposed by elementary rules of law. The record warranted the jury in finding defendant negligent in its performance of such duty.

Finally, defendant urges that the damages are excessive. Of the verdict rendered, $925 was evidently for special damages, and! $2,075 for general damages. Practically no attack is made upon the special damages. Plaintiff's original injury was a bruising and scalding of the skin of the left leg. He did nothing until a few hours after the accident, when he put some salve on the wound. Six days later he went to a physician for treatment. Antiseptic solutions were applied, because the wound indicated that poisonous germs must

have entered after the injury. The wound yielded to treatment, and its condition improved for the two or three weeks that he came to the doctor's office. For about six months following it does not appear that plaintiff was treated at all. The physician testified that the disease was aggravated and the bone was affected at that time. After consultation he took plaintiff to a hospital, opened up the bone, and cleaned out the diseased bone and the abscess below the knee. At the time of the trial, the leg was getting better. The sore was closing a little, but was still in existence. The trial court charged the jury that the evidence was not sufficient to justify it in finding that plaintiff suffered any permanent injury. At the time of the trial, more than a year after the injury, the plaintiff had not fully recovered. The court charged that "if, after the injury, the plaintiff could by the exercise of ordinary care have avoided or prevented any of the pain or suffering or disability which he suffered, then I charge you that the defendant is not liable in damages for any such consequences which could have been so avoided or prevented by the plaintiff by the exercise of ordinary or reasonable care on his part."

We are of opinion that the general damages awarded are excessive, especially in view of plaintiff's failure to have his wound treated for six months, in connection with the fact that the wound yielded to treatment, and that plaintiff was not entitled to more than $1,000 general damages.

It is accordingly ordered that unless, within thirty days from the filing in the district court of the remittitur herein, the plaintiff files a stipulation consenting to a reduction of the total verdict to the sum of $1,925, a new trial is granted.